SEXTON, Judge.
The defendants-appellants appeal the trial court judgment in favor of B.G. Patel, granting $9,900.00 to each of B.G. Patel’s two daughters and assessing the defendant-driver, Mr. Charles Dubois, with eighty-five (85%) percent liability and Mayuri Patel, the driver of the Patel vehicle, with fifteen (15%) percent liability. For the reasons expressed herein, we reverse the judgment of the trial court.
Plaintiff-appellee brought separate suits for injuries to his two minor daughters against the driver, insurer, and owner of a truck which allegedly blocked the view of his daughter whose vehicle was struck by a pickup truck as she drove from a restaurant parking lot onto Louisiana Highway 71. This accident occurred in Coushatta, Louisiana, on May 23, 1985, at approximately 7:45 p.m. Mayuri Patel was the driver of a vehicle owned by her father, B.G. Patel, in which her sister, Sapna Patel, was a passenger. The other vehicle in the accident was a 1984 Ford pickup being driven by Paula E. Herring. The two suits were consolidated for trial. The defendants-appellants are Charles Dubois, P & O Falco, Inc., and Travelers Insurance Company.[1]
Shortly prior to the accident, Mr. Charles Dubois, a truck driver for P & O Falco, Inc., was traveling south on Louisiana Highway 71. When he reached Starks Restaurant, he turned left into the restaurant and parked his 18-wheel tractor trailer parallel to the highway. Meanwhile, Mayuri and Sapna Patel were at the drive-in window at the Starks Restaurant where they each purchased a coke.
Mayuri Patel intended to exit the Starks Restaurant and turn left so as to travel in a southerly direction on Highway 71. However, as Mayuri Patel pulled onto Highway 71, she was struck by the Herring vehicle which was traveling in a northerly direction on Highway 71.
The following witnesses testified at trial: Mayuri Patel, driver of the Oldsmobile involved in the accident; Sapna Patel, a passenger in the Oldsmobile and the sister of Mayuri; Herman Jackson, the patrolman who investigated the accident; Charles Du- *184 bois, truck driver for P & O Falco, Inc.; Willis Cox, III and Brad Cloud, witnesses to the accident who were parked in the Starks Restaurant parking lot; B.G. Patel, father of the two minor children injured in the accident; Charles 0. Webb, II, an enforcement patrolman who took pictures of the accident; Paula Herring, driver of the pickup truck involved in the accident; and Ray Herd, an expert in the field of accident reconstruction.
Herman Jackson, a patrolman, testified that he arrived at the scene of the accident at 7:56 p.m. He stated that Trooper Charlie Webb assisted him in his accident investigation. Jackson testified that upon arrival, the Herring pickup truck was located right off the shoulder of the northbound lane and the Patel Oldsmobile was about 70 yards in the bushes off the road. He noted further that Dubois’ 18-wheel truck was parked in a no parking zone in front of Starks and had not been moved since the accident. Jackson issued a citation to Du-bois for parking in a no parking zone.
Jackson further testified that he saw broken glass out in the highway and that is how he determined the Patel vehicle exited Starks and entered Highway 71 from behind the 18-wheeler truck. He testified that he walked about three feet behind the Dubois truck in an attempt to determine what view Ms. Patel would have had. From Jackson’s perspective three feet behind the Dubois truck, Jackson determined “There wasn’t no way the Patel girl could see the northbound lane.”
Charles Dubois, truck driver for P & 0 Falco, Inc., testified that his 18-wheel truck had been parked about 15 minutes in the Starks parking lot prior to the accident. He testified that his 35-foot long tanker trailer was parked on the concrete Starks parking lot, rather than the paved shoulder of the road. He noted that the front of his truck was parked closer to the road than the rear end. Also, he testified that his truck was not parked in a no parking zone, but he paid the $25 citation because he felt it was cheaper than hiring an attorney to contest it. Finally, Dubois testified that he had walked around to the back of his truck and found that his view of the highway was not obstructed.
Mayuri Patel, driver of the Oldsmobile, testified that she was attempting to turn south onto Highway 71 which was a left turn out of Starks Restaurant. She stated that she came to a complete stop when she reached the intersection of Starks Restaurant exit and U.S. 71 North. She testified that she looked both ways but the Dubois truck blocked her view of the south. She stated that there were cars piling up behind her and she felt “pressured.” She testified that she eased up to the white line and stopped again, but she claimed her view was still obstructed by the Dubois truck. Then she pulled out onto Highway 71 and was struck by the northbound pickup truck driven by Herring.
Mayuri’s testimony was contradicted by her deposition taken before trial. In her deposition she stated that she did not know whether there was a white line or not. Moreover, she stated that she stopped, looked once, could not see and then pulled out onto the street.
Willis Cox and Brad Cloud were parked in the Starks Restaurant parking lot at the time of the accident. Cox testified that his car was parked at an angle slightly behind the yellow line of the parking stall in the Starks Restaurant parking lot. He stated that there was only one other parking spot to his left and another car was parked there. The 18-wheel truck was located to the left of where Cox was parked. Cox testified that he did not know whether Mayuri came to a stop before entering the highway because he witnessed only the actual collision itself. Moreover, Cox did not get in his car or any other vehicle and try to see what view Mayuri Patel had before entering onto the highway. Brad Cloud also testified that he wasn’t located where Mayuri Patel was and thus he did not know what Mayuri Patel could or could not see.
Charles 0. Webb, II was the state trooper who took pictures of the accident shortly after it occurred. Webb testified that he did not drive out of the exit in the manner and location Mayuri Patel described. He further testified that the width of the *185 shoulder was about eight feet wide. Webb testified that the Dubois truck was parked at a slight angle with the back wheels on the concrete surface and the front tandem wheels slightly on the shoulder. Webb testified that the truck was about two feet onto the shoulder past the concrete parking lot.
Sapna Patel, Mayuri’s twelve year old sister and passenger in the Oldsmobile, testified that she could not see anything at the intersection because the Dubois truck obstructed her view. However, in her deposition she had stated that she did not look to the side to see if any traffic was coming.
Paula Herring, driver of the other vehicle involved in the accident, testified that the Dubois truck blocked her view of May-uri Patel’s vehicle. She stated that she did not see the Patel vehicle stop prior to pulling out onto the highway. Also, she stated that Mayuri Patel pulled out of the Starks Restaurant exit quickly, rather than inching out.
Ray Herd, an expert in the field of accident reconstruction, was the last witness to testify. Mr. Herd is the director of the North Louisiana Criminalistics Laboratory, and he has been self-employed in the field of accident investigation for 33 years. He has helped work over 20,000 accidents. He was in the state police for eighteen years as supervisor of the Laboratory, and he assisted the state police during those years in on-scene investigations. He has a bachelor’s degree in general chemistry from North Texas State University. He also has a master’s degree in organic chemistry with a minor in mathematics from North Texas State University. Moreover, he has a master of science degree in analytical chemistry with a minor in physics from Louisiana State University in Baton Rouge. He has testified as an expert witness in the field of accident reconstruction approximately 120 times.
Mr. Herd testified that he used the photographs introduced as SP-1 through SP-11 to assist him in making a determination as to where the Dubois truck would have been parked and in preparing his diagram of the scenario at Starks Restaurant at the time of the accident. According to Mr. Herd, the parking lot extends out 54 feet from the white line. All of that space is either the paved shoulder or the concrete parking area. He stated that the front of the truck was in the southeast corner of Starks parking lot, approximately 10 to 15 feet from the Fairgrounds Road. The Fairgrounds Road was south of the Starks parking lot, and the driveway where Mayu-ri Patel exited was at the north end of Starks Restaurant. Herd testified that the no parking zone sign was about 15 feet south of the front of the Dubois truck.
Mr. Herd determined the width of Highway 71 to be about 23 feet between the white lines. He testified that the shoulder of the road is a paved area to the east of that white line, which extends out ten feet to eleven feet varying somewhat at different points. Mr. Herd stated that the shoulder measured eleven feet at the place the truck was located. Mr. Herd testified that based on his conversations with the truck driver and the use of the photographs, he determined that the right front of the truck was “maybe a little bit on the pavement” but the right rear tandem wheels were off of the shoulder on the concrete parking lot.
Mr. Herd explained how he prepared a diagram of the scene of the accident and related to the court what it was intended to show. The following testimony was eli-ticed:
A What I did to place the vehicle in this case, was to drive a Ninety Eight Oldsmobile out of the driveway towards the road, Highway 71, until I got to a point where I could clearly see all of the road to the side. And I put a little black dot right there close to the center of the vehicle, which would be where the I would be sitting in the vehicle. And then I drew a red line showing line of sight towards the south, and it would not intersect this road because south of there that road veers off to the right a little bit, and I did not stop until I could see all of the road, all of the way to the other side. And that is *186 the line of sight under those conditions.
Q And that is with the truck parked in the same location as you determined it was parked, based upon your review the photographs and'your meeting with Mr. Dubois, is that correct?
A Yes.
Q Now, the blue oldsmobile at the point where you show it is stopped, has it crossed what would be the white line that we have referred to?
A No, it is approximately three feet from the white line.
Q So at the point that the sight is ... at the point at which there is a clear vision to the left, that vehicle could have stopped and seen to the left, and it still would have been three feet from the white line, is that correct?
A Yes. This vehicle is eighteen feet and four inches in length, if you are in the center of it, which you are not quite in the center, you are a little bit farther from the center when you are seated in the car. You are actually about seven and one-half feet from the front of the ... what I mean is, your front bumper could be seven and one-half feet from that white line, and see anything to the south on that shoulder.
Q If I understood you correctly then, at a point where your front bumper would have been seven and one-half feet from the white line, would this truck parked where it was parked, according to the photographs by the state trooper, she would have been able to see to the left, is that correct?
A Even if the truck was six feet closer to the roadway, she could still see it. Actually, if that truck was parked eight feet from the white line, you could come up right behind it and still see to the side, if you were very careful and stopped, and waited.
Mr. Herd testified further that during his accident reconstruction he had an occasion to ask another 18-wheel truck to park where the Dubois vehicle had been. That vehicle was wider than the Dubois truck. Mr. Herd then took a photograph marked D-ll from a car that he had stopped in a similar location to where the Patel vehicle would have been. The photograph depicts a clear view of oncoming northbound traffic.
On April 21,1986, the trial court signed a judgment in favor of B.G. Patel and against Charles Dubois, P & O Falco, Inc. and Travelers Insurance Company in the amount of $9,000 for each of the Patel girls injured in the automobile accident. The trial court further assessed Mr. Charles Dubois with 85% liability and Mayuri Patel with 15% liability. Thereafter, defendants perfected this suspensive appeal.
On appeal, appellants assert that the trial judge erred in holding that Charles Du-bois was negligent in the manner in which he parked his vehicle and in holding that such negligence was a cause in fact of the resulting accident between the Patel vehicle and the Herring vehicle. Appellants claim that the trial judge erred in failing to find that Mayuri Patel assumed the risk of her injuries, and thereby erred in assessing the percentages of fault.
The Louisiana Courts of Appeal have full jurisdiction to review both law and facts. Louisiana Constitution of 1974, Art. 5, § 10(B). In reviewing lower court’s findings of fact, the appellate court’s standard of review is whether those findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); Elliott v. Eaves, 476 So.2d 388 (La.App. 2d Cir.1985), writ denied 478 So.2d 908 (La.1985).
The critical factual issue on appeal is whether the vision of Mayuri Patel was obscured by the Dubois truck as she attempted to look for oncoming traffic from the south.
Our review of the trial transcript reveals that no “eyewitness” attempted to place himself in the same position as Mayuri Patel. On the contrary, several so-called eyewitnesses testified to the effect that the Dubois truck blocked their vision at the *187 position at which they were located. The record reflects that these positions were substantially different from the location of Mayuri Patel before she exited the parking lot. Thus, none of these witnesses were in a position to testify as to whether the Patel vehicle could have stopped at any point short of the intersecting Highway 71 and have had an unobstructed view of northbound traffic on Highway 71.
Willie Cox, who was sitting in a car in front of the Starks Restaurant with his friend Brad Cloud, was located quite some distance from where Mayuri Patel was attempting to enter Highway 71. Cox testified that he did not know whether the Patel vehicle had come to a stop at any time prior to entering Highway 71. Moreover, Cox testified that he did not get in his car or any other vehicle and try to see what view Mayuri Patel had before entering onto the highway. Similarly, Brad Cloud testified that he was not located where Mayuri Patel was and thus, he did not know what Mayu-ri Patel could see or could not see.
Neither of the investigating officers placed himself in the position of the Patel vehicle. According to Officer Herman Jackson, he stood about three feet behind the Dubois truck and not where Mayuri Patel would have been exiting the parking lot some 80 feet away. Trooper Charles Webb also acknowledged that he did not at any time drive into the parking lot or attempt to exit where the Patel vehicle had come from in an effort to see what Mayuri Patel could or could not have seen.
Paula Herring, driver of the pick-up truck involved in the accident, also was not in a position to have been capable of observing what Mayuri Patel could have seen from where she was located. Thus, the only remaining witnesses to the accident were the plaintiffs themselves, Mayuri and Sapna Patel, whose testimony was contradictory to their depositions taken only four days prior to trial.
Particularly telling are the photographic exhibits “SP-6” and “D-9.” [2] We note that the distinction between the paved shoulder and the concrete parking lot is readily ascertainable thereon. Although the front of the Dubois truck is blocked by the deputy’s vehicle, it appears as though the right front fender might extend onto the paved shoulder. Quite damaging to the plaintiffs claim is the fact that photographic evidence shows that there was enough room between the Dubois truck and the white line separating the paved shoulder from the northbound travel lane of Highway 71 for the deputy’s vehicle to have parked there. Only the left tires and the left headlights of the deputy’s vehicle extend across the white line. The remainder of the deputy’s vehicle is completely on the shoulder.
The most telling evidence is depicted in the photograph marked for identification as exhibit “D-ll.” This photograph was taken by Mr. Herd from a car that he had stopped in a location quite similar to that described by Mayuri Patel as the location of her vehicle before exiting the Starks lot. Mr. Herd testified that he used photographs marked “SP-1” through “SP-11” to assist him in making a determination as to where the Dubois truck would have been parked at the time of the accident. The truck in the photograph is another 18-wheel truck slightly wider than the Dubois truck which Mr. Herd had asked to park where the Dubois truck had been. Mr. Herd testified that this picture was taken approximately three feet from the white line while he sat in an Oldsmobile at the point he determined the Patel vehicle would have been located. It is clear from this photograph that a person sitting in the driver’s seat from a point where Mr. Herd determined Mayuri Patel would have been could have stopped an entire three feet from behind the white line and seen oncoming northbound traffic without any obstructed view caused by the parked 18 wheel truck.
Mr. Ray Herd, by formal education and accident investigation experience, is more than well qualified as an experienced ex *188 pert witness in the field of accident reconstruction. Mr. Herd took measurements of the roadway and the parking lot and determined that there existed approximately 9 feet between the right front cab of the Dubois truck and the white line dividing the paved shoulder from the northbound lane of Highway 71. Mr. Herd testified unequivocally that with the Dubois truck parked in the position as shown in “SP-6” and “D-9,” Mayuri Patel could have brought her car to a stop with the front bumper at least three to seven feet from the white line and at that point, she would have had an unobstructed view to her left.
Therefore, even assuming Mr. Dubois’ vehicle was parked in a no parking zone, which we have some cause to doubt from the pictures, the position of his truck was not a cause of the accident in question. None of the witnesses who were customers of Starks were located in a position at the time of the accident to accurately observe the line of sight of Mayuri Patel. Additionally, none of these witnesses placed themselves in that location. Thus, any assessment by these witnesses of the nature of the obstruction must be viewed with extreme caution. Neither of the investigating officers placed himself in the critical position, and the only witnesses at that spot, the Patel daughters, were seriously contradicted by their depositions. The accident scene pictures taken by the investigating trooper allowed the qualified accident reconstruction expert to accurately determine the location of the Dubois truck and accurately place a slightly larger truck in that position at a later time. Additionally, those pictures, together with the other exhibits, when compared with the known physical circumstances of the Starks premises, made it possible for Mr. Herd to accurately determine the location of the Patel vehicle prior to its entrance onto the highway.
This evidence makes it abundantly clear that the Dubois vehicle was barely on the shoulder of the road, if at all. The known physical facts extrapolated from the date of the accident, when coupled with the known circumstances of the premises, graphically illustrate that it was impossible for the accident to have occurred as Mayuri Patel described. Mr. Herd’s reconstruction is clear and devastating to this plaintiff. Her view was unobstructed. Any finding to the contrary is clearly wrong. Thus, the trial court judgment in favor of the plaintiff will be reversed.
Acordingly, it is ordered, adjudged and decreed that the judgment of the trial court herein in favor of B.G. Patel is hereby reversed and there is judgment herein rejecting the demands of the plaintiff at his cost.
REVERSED AND RENDERED.
FRED W. JONES, Jr., J., dissents and assigns written reasons.

. In his suit brought on behalf of Sapna, B.G. Patel also made American Employer Insurance Company, alleged to be the liability insurer of Mayuri, a defendant. B.G. Patel compromised Sapna’s action against that defendant shortly before trial. Ms. Herring was not made a defendant in either suit.

. The photographs are the same with the defendant’s exhibit being a blow-up of the plaintiffs’ exhibit. This photograph was taken by Trooper Webb shortly after the accident and before any of these vehicles had been moved.